831 So.2d 403 (2002)
BAIL BONDS UNLIMITED, INC.
v.
Shane CHEDVILLE, Francis Debelo, Jr., Matthew Dennis, Robert Dennis, Dearl Rusidale and Bradley Dufresne, Jr.
No. 01-CA-1401.
Court of Appeal of Louisiana, Fifth Circuit.
October 29, 2002.
*404 Kenneth J. Beck, Street Gretna, LA, for plaintiff-appellant.
Gary W. Bizal, New Orleans, LA, for defendants-appellees.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
CLARENCE E. McMANUS, Judge.
Appellant, Bail Bonds Unlimited, Inc., seeks relief from the trial court judgment denying its request for a preliminary injunction against appellees, Shane Chedville, Francis Debelo, Jr., Matthew Dennis, Robert Dennis, Dearl Rusidale, and Bradley Dufresne, Jr. We affirm the judgment of the trial court.

FACTS
Appellees were employed by Bail Bonds Unlimited, Inc. (Bail Bonds) as fugitive recovery agents. All, except Debelo, had signed employment contracts, entitled "Salaried Agent Agreement", which included a non-compete clause that stated:
23. NON-COMPLETE CLAUSE. In the event that this Agreement is terminated, the AGENT agrees not to solicit and execute bail bonds on behalf of any other entity or person as long as GENERAL AGENT conducts a bail bond business in the designated area specifically in the following parishes
Jefferson, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John and St. Tammany
for a period of two years from date of termination of this agreement. In the event that the AGENT violates this clause, the AGENT consents to the issuance of an injunction by any competent court enjoining the AGENT from soliciting and executing bail bonds in those areas covered by this agreement. The AGENT agrees further that in the event of any violation of this non-compete clause, the AGENT shall pay the GENERAL AGENT as liquidated damages an amount based on the same percentage agreed to in this agreement for premiums due to GENERAL AGENT on the face amount of any bond that the AGENT writes in violation of this non-compete clause.
The AGENT agrees to keep the SUPERVISING AGENT and the GENERAL AGENT'S business secret, including but not limited to customer, supplier, logistical, financial, research, and development information, procedure, forms, practices and contracts confidential and not disclose the SUPERVISING AGENT and GENERAL AGENT'S business secrets to any third party during and after the term of the Agent's contract.
In addition, the AGENT agrees not to accept a position as a manager, general manager, or general agent, or any other *405 position with a general agency, bail bond agency, or insurance company which is in the business of executing bail bonds, soliciting and/or managing agents that executes bail bonds, for the period of two years from date of termination, in the above named Parishes as long as GENERAL AGENT conducts a bail bond business in the designated areas.
I hereby swear or affirm that the posting of commercial bail bonds, and the management of a BAIL BOND AGENCY OR general agency or insurance company which executes bail bonds, manages and/or solicits people who execute and/or solicits bail bonds was not my primary source of income prior to acceptance of this position, and should not be considered my livelihood. I further affirm that I have previously been employed outside of an agent position and have received all the education and training necessary to continue another profession.
In May 2001, all appellees' employment with Bail Bonds was terminated. Appellees contend they were fired for no reason. Bail Bonds contends that appellees quit. After their termination, appellees all worked for Steve Gherich, owner of Steve's Bail Bonds. At the hearing on the Motion for Preliminary Injunction, appellees Chedville, Matthew Dennis, Rusidale, and Dufresne testified that they worked for Steve's Bail Bonds while employed by Bail Bonds Unlimited. They further testified that Bail Bonds owners knew of their continued employment with Steve's but did not object to that employment.
Bail Bonds now seeks to enforce the non-compete clause of appellees' contracts. Bail Bonds contends that appellees should not be able to solicit and/or execute bail bonds, write bonds, or assist in writing bonds in Jefferson, Orleans, Plaquemines, St. Bernard, St. Charles, St. James, St. John or St. Tammany parishes until May 29, 2003. Bail Bonds filed a Petition for Damages and Injunctive Relief and sought a temporary restraining order, which was granted. Thereafter, a hearing on the motion for preliminary injunction was held on June 22, 2001 and the matter was taken under advisement by the trial court.
On July 17, 2001, the trial court issued a judgment in which Bail Bond's request for a preliminary injunction was denied and the previous temporary restraining order was dismissed. The trial court stated in oral reasons for judgment that it intended to rule in favor of Bail Bonds, however, the Louisiana Supreme Court case of SWAT 24 Shreveport Bossier, Inc. v. Robbie Bond, XXXX-XXXX (La.6/29/01) 808 So.2d 294, which was decided on June 29, 2001, regarding non-competition clauses in employment contracts forced a different result. Bail Bonds now appeals the trial court's judgment denying the preliminary injunction.

DISCUSSION
Bail Bonds argues on appeal that the trial court incorrectly relied on the Supreme Court's decision in SWAT 24. Bail Bonds contends the facts of this case are distinguishable from those in SWAT 24. The trial court found the non-compete clause in appellees' contracts to be null and void based on the Supreme Court's analysis in SWAT 24. We agree with the trial court and assess the following reasons.
La. R.S. 23:921(A)(1) provides:
Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade or business of any kind, except as provided in this Section, shall be null and void.
Louisiana has a strong public policy disfavoring noncompetition agreements between *406 employers and employees. SWAT 24 Shreveport Bossier, Inc. v. Bond, XXXX-XXXX (La.6/29/01) 808 So.2d 294, citing Louisiana Smoked Products, Inc. v. Savoie's Sausage & Food Products, 96-1716 (La.7/1/97), 696 So.2d 1373.
The statute does provide for exceptions to the general rule disfavoring non-competition clauses in employment contracts. La. R.S. 23:921(C) provides that:
Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.
In SWAT 24 Shreveport Bossier, Inc., 808 So.2d 294, the defendant, Bond, was a carpenter helper who was later promoted to production manager for SWAT 24, a licensed contractor specializing in insurance restoration work following disasters such as fires, floods, and hail storms. SWAT 24 provided immediate emergency repair and restoration of the home. Bond entered into an employment contract, which included a non-competition clause, when he was promoted. The non-competition clause provided that he could not directly or indirectly compete with SWAT 24, request or cause an employee of SWAT 24 to terminate his/her employment, or offer to employ any employee of SWAT 24 for a period of two years in Caddo, Bossier, Webster, Claiborne, Lincoln, Union, Jackson, Oauchita, Desoto, Red River, Sabine, Bienville, Winn or Caldwell parishes and East Texas and Southern Arkansas.
Bond resigned on June 19, 1998 and went to work for National Restoration Services, another construction company in the same area. SWAT 24 sought to enforce the non-competition clause. The trial court ultimately denied the request for injunctive relief finding that Bond worked as production manager for both companies; however, the language of the clause in the contract went beyond the limited exceptions of La. R.S. 23:921. The court of appeal affirmed the trial court's judgment and the Louisiana Supreme Court granted the writ of certiorari in order to resolve the disputes among the circuits as to the interpretation of La. R.S. 23:921(C). The Supreme Court held that Bond's non-competition agreement was impermissibly overbroad and, therefore, unenforceable. In interpreting the scope of La. R.S. 23:921(C), the Court concluded that an agreement that restrains an employee from carrying on or engaging in a competing business as an employee of another does not fall under the exception and would be null and void. La. R.S. 23:921(C) would only apply to an agreement which prohibits an employee of a company from leaving and beginning his own similar business in competition with its original employer.
Following the interpretation of the statute by the Louisiana Supreme Court in SWAT 24 Shreveport Bossier, Inc., we agree with the trial court in this case and *407 find that the non-compete clause, in the appellees' employment contracts with Bail Bonds Unlimited, is overly broad. The agreement prohibited the appellees from working for another company that was in competition with Bail Bonds Unlimited, just as the agreement in SWAT 24 Shreveport Bossier, Inc. provided. In addition, the appellees are employed by Steve's Bail Bonds and have not formed their own businesses.
Thus, we find the non-competition clause in these employment contracts to be unenforceable. In accordance with the above reasons, we affirm the trial court's denial of the appellant's motion for preliminary injunction.
AFFIRMED.