WALTER J. ROTHSCHILD, Judge.
- Isfiestored gurfaceS) jnC- d/b/a Surface Restoration (“RSI”), filed this petition against Emile J. Sanchez seeking damages for breach of Employment and Sales Contracts entered into between the parties[1]. Specifically, RSI alleged that Sanchez violated the terms of a Noncompete Agreement contained in the Employment Contract. RSI also moved for a Preliminary Injunction seeking to enforce the terms of the Noncompete Agreement and to prohibit Sanchez from engaging in any business that competes with RSI in specified Louisiana parishes. A copy of the Employment Contract, dated March 16, 2005, was attached to plaintiffs petition.
In response to this petition, Sanchez filed a Peremptory Exception of No Cause of Action, seeking dismissal of RSI’s claims for breach of Employment Contract, breach of Noncompete Agreement, and the motion for a Preliminary Injunction. RSI opposed the exception, and the matter was heard by the trial court on February 7, 2011. By judgment with reasons rendered on February 8, 2011, the trial court maintained the exception and dismissed RSI’s claims with prejudice. |sOn March 15, 2011, the trial court certified the judgment as a final, appealable judgment pursuant to La. C.C.P. art. 1915(B). This appeal follows.
RSI argues by this appeal that the trial court erred in maintaining the exception of no cause of action and in failing to hear plaintiffs request for a preliminary injunction. For the reasons stated herein, we find this argument to have merit and we therefore must reverse the trial court’s ruling and remand the matter for further proceedings.
The purpose of the peremptory exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the petition. Scheffler v. Adams and Reese, LLP, 06-1774, p. 4 (La.2/22/07), 950 So.2d 641. The peremptory exception of no cause of action is triable on the face of the pleadings, and, for purposes of resolving issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. Scheffler, 06-1774 at p. 5, 950 So.2d at 646. Thus, to determine whether the trial court erred in granting the defendant’s Exception of No Cause of Action, we must accept all facts alleged in the petition as true.
The burden of demonstrating that a petition fails to state a cause of action is upon the mover. Because the exception of no cause of action raises a question of law and the district court’s *527 decision is based solely on the sufficiency of the petition, review of the district court’s ruling on an exception of no cause of action is de novo. City of New Orleans v. Board of Comm’rs of Orleans Levee Dist., 93-0690, p. 28 (La.7/5/94), 640 So.2d 237, 253.
In support of his exception, Sanchez cites to La. R.S. 23:921, which governs the validity and enforceability of non-competition agreements in Louisiana. At the time of the 2005 agreement between RSI and Sanchez, the statute provided in part as follows:
14A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.
Sanchez does not dispute that he executed this agreement with RSI or that he has been employed by a competitor of RSI. Rather, he contends that because the Noncompete Agreement has the effect of the restraint of his profession, the agreement is against public policy, unenforceable and null and void.
In opposition to the exception, RSI argues that the Noncompete Agreement is valid and enforceable, citing to Subsection C of the statute as an exception to the general rule that contracts restraining trade are unenforceable. That section provides:
C. Any person, including a corporation and the individual shareholders of such corporation, who is employed as an agent, servant, or employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment. An independent contractor, whose work is performed pursuant to a written contract, may enter into an agreement to refrain from carrying on or engaging in a business similar to the business of the person with whom the independent contractor has contracted, on the same basis as if the independent contractor were an employee, for a period not to exceed two years from the date of the last work performed under the written contract.
Historically, Louisiana’s public policy has disfavored noncompetition agreements. SWAT 24 Shreveport Bossier, Inc. v. Bond, 00-1695, p. 3 (La.6/29/01), 808 So.2d 294, 298; H2O Hair, Inc. V. Marquette, 06-930, p. 13 (La.App. 5 Cir. 5/15/07), 960 So.2d 250, 258. This policy is based on the state’s desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden. SWAT 24, 00-1695 at 3, 808 So.2d at 298; H2O Hair, Inc., 06-930 at 13, 960 So.2d at 258. Such agreements are in derogation of the common right, and must be strictly construed against the party seeking their enforcement. SWAT 24, 00-1695 at 3, 808 So.2d at 298; H2O Hair, Inc., 06-930 at 14, 960 So.2d at 259.
La. R.S. 23:921(C) is an exception to Louisiana’s public policy against non-competition agreements and, as such, must be strictly construed. Kimball v. Anesthesia Specialists of Baton Rouge, Inc., 00-1954, pp. 67 (La.App. 1st Cir.9/28/01), 809 So.2d 405, 410-11, writs denied, 01-3316, 0-13355 (La.3/8/02), 811 So.2d 883, 886. *528 Under this provision, an independent contractor may enter into agreements not to compete and not to solicit customers within a specified geographical area for a period of no more than two years. The exceptions set forth in La. R.S. 23:921(C) must be strictly construed, and agreements con-fected pursuant to this provision must strictly comply with its requirements. SWAT 24, supra.
A noncompetition agreement is a contract between the parties who enter it, and it is to be construed according to the general rules of contract interpretation. SWAT 24, supra. The common intent of the parties is used to interpret a contract. La. C.C. art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. La. C.C. art. 2046.
In maintaining the defendant’s exception of no cause of action, the trial court relied on two prior decisions from this Court which followed the holding of the Supreme Court in SWAT 24 supra: Richard Berry & Associates, Inc. v. Bryant, 03-106 (La.App. 5 Cir. 4/29/03), 845 So.2d 1263 and Bail Bonds Unlimited, Inc. v. Chedville, 01-1401 (La.App. 5 Cir. 10/29/02), 831 So.2d 403, writ denied, 02-2913 (La.2/07/03), 836 So.2d 104. In SWAT 24 and the cited cases, La. R.S. 23:921(C) was interpreted as restricting an employee or independent contractor from engaging in or carrying on his own competing business, but still allowing an employee or independent contractor to become employed by a competitor of his former employer.
However, this interpretation of “carrying on and engaging in a business similar to that of the employer” in La. R.S. 23:921(C) has since been legislatively overruled. By Act 2003, No. 428, effective August 15, 2003, the legislature broadened the scope of noncompete agreements by amending La. R.S. 23:921 to provide:
D. For the purposes of Subsections B and C, a person who becomes employed by a competing business, regardless of whether or not that person is an owner or equity interest holder of that competing business, may be deemed to be carrying on or engaging in a business similar to that of the party having a contractual right to prevent that person from competing.
Thus, La. R.S. 23:921, as amended in 2003, now provides that a person who becomes employed by a competing business, regardless of whether he is an owner or equity interest holder of that business, may be deemed to be carrying on or engaging in a business similar to that of his former employer who seeks to enforce a noncompete agreement. La. R.S. 23:921(D). The 2005 Employment Contract executed by the parties in this case was therefore governed by the 2003 statutory amendments. We therefore find that the trial court erred in applying pre-amendment jurisprudence to the facts of this case. The court erred in failing to consider the effect of the statute as amended on whether RSI has stated a cause of action in the present case.
|7In the present case, the “General Independent Contracting Agreement” executed by the parties on March 16, 2005 and referred to in plaintiffs petition as the Employment Contract provides that as an independent contractor, Sanchez agreed to properly refinish bathtubs and countertops of buildings, residences or other structures assigned to him by RSI. The compensation amount for this service is also specified in the terms thereof. The Employment Contract also references the Noncompete Agreement which is incorporated into the document, and provides in *529 part that if the contract was terminated, Sanchez agreed to refrain from:
(A) Carrying on or engaging in a business similar to that of SURFACE RESTORATION, INC., within the specified Parishes of the State of Louisiana listed in the Geographical Areas Addendum (Exhibit “A”), attached hereto and incorporated herein, during the two (2) year period from the termination date of the relationship with SURFACE RESTORATION, INC.
(B) Directly or indirectly owning, managing, operating, joining, controlling, being employed by, or participating in the ownership, management, operation or control of, or being connected in any manner with any business engaged to any extent in a business similar to that of SURFACE RESTORATION, INC. or any of its subsidiary corporations, or any of its parent corporations, in competition with SURFACE RESTORATION, INC., within the specified Parishes of the State of Louisiana listed in the Geographical Areas Addendum (Exhibit “A”), attached hereto and incorporated herein, during the two (2) year period from the termination date of the relationship with SURFACE RESTORATION, INC.
(C) Soliciting or contacting, directly or indirectly, any customer, client, underwriter, servicer, supplier or former customer, client, underwriter, servicer or supplier of SURFACE RESTORATION, INC., in an attempt to thereby procure business for EMILE J. SANCHEZ or divert business from SURFACE RESTORATION, INC., within the specified parishes of the State of Louisiana listed in the Georgraphical Areas Addendum (Exhibit “A”), attached hereto and incorporated herein, during the two (2) year period from the termination date of the relationship with SURFACE RESTORATION, INC.
The Geographical Areas Addendum (Exhibit “A”) attached to this document lists the following State of Louisiana parishes to which the agreement applies: East Baton Rouge, Orleans, Jefferson, Livingston and Ascension.
|sIn its petition, RSI, a Texas corporation, alleges that it generally specializes in the repair, stripping, resurfacing, refinishing, and remodeling of bathtubs, sinks, tile, countertops and other various surfaces found in kitchens and bathrooms located within residential and other buildings and properties. RSI alleged that in March of 2005, it hired Sanchez as an independent contractor pursuant to the written Employment Contract to perform and oversee its on-site surface restoration and refinishing work in furtherance of RSI’s Louisiana business. RSI alleges that the Noncom-pete Agreement was incorporated and made part of the Employment Contract, and that Sanchez terminated the employment contract on May 26, 2010.
RSI further alleges that while still an independent contractor pursuant to the Employment Contract, Sanchez “associated himself with and engaged in a business that directly competes with RSI, namely QUALITY REFINISHING, LLC ... by procuring business for QUALITY REFINISHING, LLC in the prohibited geographical areas, ... primarily by exploiting his established personal relationships with RSI’s long-established customers in these areas and soliciting business from these customers, in direct competition with RSI, effectively usurping much of RSI’s long establish business.” RSI further alleges *530 that Sanchez “continues to solicit and procure business ... from longstanding customers and clientele and to advertise and promote the similar resurfacing business of QUALITY REFINISHING, LLC, a Louisiana company directly competing with RSI, with the deliberate purpose and effect of usurping much of RSI’s business in the prohibited Louisiana parishes specifically identified under the Noncompete Agreement.” RSI alleges that if the terms of the Noncompete Agreement executed by Sanchez qualifies as an exception to the general prohibition against agreements in restraint of trade, the agreement is valid and enforceable under Louisiana law. RSI alleges that the terms of the Noncompete Agreement meet the requirements set 19forth in La. R.S. 23:921(C), and that by carrying on and engaging in a business similar to that of RSI in the specified Louisiana parishes, in direct competition with RSI, Sanchez is in direct violation of the Noncompete Agreement. RSI sought both money damages and injunctive relief as provided for by contract.
Accepting as true the allegations of the petition, we find that RSI has properly stated a cause of action against Sanchez for breach of the Employment Contract. We find, according to the allegations of the petition and pursuant to La. R.S. 23:921, as amended, the action sought to be enjoined by RSI falls within a strict construction of the exception set forth in La. R.S. 23:921(C). We therefore hold that the trial court erred in maintaining defendant’s peremptory exception and dismissing plaintiffs petition, and the judgment is therefore reversed. However, as the only issue before us is whether the petition states a cause of action, nothing in this opinion should be construed as a ruling on the merits of plaintiffs petition for damages and injunctive relief. The matter is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are assessed against Emile Sanchez.

REVERSED AND REMANDED

. The dispute over the Sales Contract is not a part of this appeal and will not be addressed herein.